HAZZARD v. FITZHUGH et al.[1]

(Circuit Court of Appeals, Fifth Circuit. December 8, 1896.)

No. 490.

MORTGAGE OF HOMESTEAD—COLORABLE CONVEYANCE—FORECLOSURE—ACTION FOR POSSESSION—BILL TO ENJOIN—INNOCENT PURCHASER.

A husband and wife, colorably and for the purpose of borrowing money thereon, conveyed, by deed absolute, their homestead to a third person, for a recited consideration, part in cash and part in a purchase-money note; at the same time making affidavit that the sale was bona fide. No cash passed; but the note, by previous arrangement, was taken by a mortgage company, which paid the amount to be loaned directly to the husband, the grantee of the land giving it a deed of trust to secure the same. The note, guarantied by the mortgage company, was sold by it to defendant, an innocent purchaser for value, without notice, who, after maturity of the note, caused the property to be sold under the trust deed, and bought it in for less than the sum due. Defendant then brought an action at law to recover possession of the land from the husband and wife, who had remained in possession, whereupon they filed this bill in equity to enjoin the prosecution of such action. *Held*, that the injunction must be denied, the case being ruled by the equitable principles that between equal equities the law will prevail, and that the equity of a person misled is superior to that of the person misleading.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

This was a suit in equity by Mrs. A. E. Fitzhugh and her husband, L. H. Fitzhugh, against Mrs. Fisher Hazzard, to enjoin the latter from prosecuting an action of ejectment; complainants claiming to be the equitable owners of the land in controversy, as their homestead. The title sued upon in the ejectment suit by the defendant herein was a title acquired by purchase upon the foreclosure of the trust deed mentioned in the opinion of the circuit court, which is set out below. The defendant filed an answer under oath, and also a cross bill, praying affirmative relief. The circuit court entered a decree dismissing the cross bill, canceling the alleged lien of the defendant and all her muniments of title, and perpetually enjoining her from setting up any claim to the premises, or further prosecuting her action of ejectment.

The circuit court (McCormick, Circuit Judge) delivered an opinion, which is here set out in full:

All of the chief actors in the transaction out of which this suit grew are persons of high respectability and superior intelligence. They have all testified by deposition in this case, and I find no substantial conflict in their testimony. I have examined fully and carefully all of the evidence, and find that the complainants, L. H. Fitzhugh and A. E. Fitzhugh, were married in December, 1851, and from that time have lived together as husband and wife. In 1886 they acquired the land in controversy, and from that year have continued to occupy and

[1] Rehearing denied January 26, 1897.

use it as their residence homestead, having and claiming no other homestead. In the latter part of November, 1888, L. H. Fitzhugh applied to Bryan T. Barry, then the manager of the Security Mortgage & Trust Company, for a loan of money to be secured on the land in controversy. The form of security offered was a deed by the complainants to S. H. Milliken and a note by Milliken, purporting to be for the unpaid purchase money in the sum of six thousand five hundred dollars, with the vendors' lien on the land. Barry knew that the premises were Fitzhugh's homestead; that Milliken was their son-in-law; and when, after some conference and inquiry, he had satisfied himself that the dealings with Milliken were simulated, he declined to take the note. A few days after this, negotiation began with H. M. Taylor, and he and L. H. Fitzhugh saw Barry in reference to getting from the company about $4,500, which Fitzhugh desired to raise on the land, the security to take the customary shape of a deed from the husband and wife to H. M. Taylor, reciting a cash consideration in part and a purchase-money note for the balance, to become due in five years. The abstract of title was submitted to Judge T. S. Miller, the company's legal adviser, but no intimation was given him touching the recent offer and rejection of the Milliken deed and note on the same property. The attorney's report on the title being satisfactory, Barry agreed to give $4,500 for the note. The deed from L. H. Fitzhugh and his wife, A. E. Fitzhugh, to H. M. Taylor, the joint affidavit of all three, the purchase-money note, and the deed of trust executed by H. M. Taylor, were all prepared in the office of the company, under Barry's dictation, on printed forms kept in stock in readiness, and furnished by the company for such transactions. The deed recited a cash consideration in the sum of $9,000 in hand paid to the grantors by the maker of the note, and the further consideration of $5,-200, for which latter sum the lithographed note with coupons was given, payable to the order of the Security Mortgage & Trust Company; and the deed of trust was made to J. T. Dargan, trustee, and to his successors in this trust, to secure the payment of the principal note and interest coupons as each matured. These papers all bear date 10th December, 1888, and appear to have been executed and delivered on that day. The joint affidavit of the three parties is as follows:

"The State of Texas, County of Dallas—ss.: We, L. H. Fitzhugh and wife and H. M. Taylor, do solemnly swear that on the 10 day of December, 1888, the said L. H. Fitzhugh and wife sold to said H. M. Taylor a certain parcel of land, to wit, 3½ acres of the John Grigsby survey, in East Dallas, Dallas county, Texas, described in the deed thereto, and in part payment for which a balance of $5,200 will be due on the 1st day of December, 1893, with interest at the rate of seven per cent. from December 10, 1888; that said balance is a subsisting vendor's lien against said land conveyed in said deed, recorded in Book ——, page ——, Records of Deeds of Dallas County, to which said deed and the record thereof reference is hereby made for a more complete description of said land; that the vendor's lien is specially retained in said deed to secure the payment of said balance; that all payments made on said balance have been credited; that there are no pending suits or unsatisfied judgments in the supreme court, or any circuit or district court of the United States, or in the supreme court, court of appeals, or any district, county, or justice of the peace's court of this state, or in any other court whatsoever, which in any manner affect the title to said land; that there are no executions against us in the hands of any United States marshal, or of any sheriff or constable, and that none of said officers have levied on, or advertised for sale, or made a deed to, said land, or any part thereof, since the said L. H. Fitzhugh and the said H. M. Taylor acquired title to it; that we are neither principal nor surety upon any bond which is or may become a lien upon said land; that there are no mechanics' liens, or liens for labor or materials, upon the buildings situated upon said land; that there are no unrecorded deeds, trust deeds, or mortgages to or upon said premises; that the said deed to said land was made in good faith, and not for the purpose of defeating or avoiding any homestead law of this state; that the title is perfect in the said H. M. Taylor, subject to said lien; that the said vendors were of legal age when said deed was executed; that there are no liens of any kind against said land prior to said vendor's lien; improved city property; that there is on said premises one house, of the value of $4,500.00; 1 barn, of the value of $500.00; other outhouses, of the value of $200.00; and fencing, of the value of $200.00; that the present value of the premises, without the perishable improvements, is $9,000.00; that the present

value of the perishable improvements, including fencing, is $5,200.00; that the total value of the above-described premises is $14,200.00; that Taylor owns other real estate and property as follows, about $1,500.00, clear of all lien; that my indebtedness is, besides said note, $1,600.00; that the above representations are made for the purpose of effecting a sale of the vendor's lien as above described; and that they are true.

H. M. Taylor.<br>
"L. H. Fitzhugh.<br>
"A. E. Fitzhugh.

"Sworn to and subscribed before me, this 10 day of December, A. D. 1888, and I hereby certify that affiants were by me made acquainted with the contents of this instrument before swearing.

"[Seal.]                            M. L. Robertson,<br>
"Postoffice of Maker, Dallas, Tex.           Notary Public, Dallas Co."

Bearing the same date is a letter addressed to the Security Mortgage & Trust Company, in these words:

"Gentlemen: I was present and acted as attorney in making the sale of 3½ acres to H. M. Taylor, from L. H. Fitzhugh and wife, A. E. Fitzhugh, and believe the same to be a bona fide transaction, and an absolute sale, without any condition of defeasance.            Lafayette Fitzhugh, Attorney."

There is also another affidavit, as follows:

"The State of Texas, County of Dallas. Before me, the undersigned authority, on this day personally appeared L. H. Fitzhugh and A. E. Fitzhugh, husband and wife, who, after having been by me duly sworn on oath, says: That they in good faith have sold and conveyed a certain tract of land as follows: 3½ acres adjoining the city of East Dallas, in Dallas county, out of the John Grigsby survey, beginning at a stake in the S. W. boundary of Gano avenue, 861 feet S., 45 deg. east, from the center of Ross avenue; thence N., 45 deg. W., 360 feet, along the line of Gano avenue to San Jacinto street; thence S., 45 deg. W., 408 feet, to the N. E. line of Fitzhugh avenue, on the E. boundary line of Duncan & Words addition; thence S., 45 deg. E., 360 feet, to a point on Fitzhugh avenue; thence N., 45 deg. E., 408 feet, to the place of beginning,—being 3½ acres out of 4½-acre tract conveyed to L. H. Fitzhugh by Jno. T. Gano, 31st Aug., 1886, and recorded in Book 92, page 330, Records of Deeds, Dallas County. That the intention and purpose in making said conveyance was to make an absolute sale of said property. That at the time of the execution of said conveyance there was no expressed or tacit understanding between us and said Taylor that said conveyance was made for the purpose of evading the homestead law, and was not made for the purpose of procuring a loan on said property, nor with any condition of defeasance whatever. Witness our hands, this 10th day of December A. D. 1888.                               L. H. Fitzhugh.<br>
"A. E. Fitzhugh.

"Sworn to and subscribed before me, this 10th day of December, A. D. 1888.<br>
"[Seal.] .                                 M. L. Robertson,<br>
"Notary Public, Dallas County, Texas."

The writer of the letter is the son of complainants. The transaction, as between the complainants and H. M. Taylor, was wholly colorable. The recitation of the cash consideration was purely fictitious. No money passed or was to pass in the transaction, except the $4,500, which was passed the same day directly from Barry to L. H. Fitzhugh. The note and deed of trust were sold to Mrs. Hazzard for their full face value, without notice of the simulation; but, by subsequent dealings between her and the mortgage company, she now has no substantial interest in the controversy, and the Security Mortgage & Trust Company is now as much the real beneficial owner of the securities as if no transfer of them had been made.

I conclude that Barry had then present knowledge of facts sufficient to charge him and the company he represented with notice of the character of the transaction between Fitzhugh and Taylor; that the deed of trust was void, and the land is not bound. The respondent is entitled to have a judgment against L. H. Fitzhugh for the amount remaining unpaid on the note, assessing that amount without reference to the $3,000 which appears indorsed as amount bid at the sale made by the substitute trustee, and all the costs in this suit; and the complain-

ants are entitled to a decree making void their deed to H. M. Taylor, his deed of trust to J. T. Dargan, and De Edward Greer's deed to Mrs. Fisher Hazzard, the respondent; removing the cloud cast by these conveyances on complainants' homestead, perpetually enjoining the respondent from asserting any right thereunder, and quieting the title and right of possession in the complainants to the land in controversy, and adjudging costs against the respondent in favor of the complainant A. E. Fitzhugh.

W. W. Leake and De Edward Greer, for appellant.

K. R. Craig, for appellees.

Before PARDEE, Circuit Judge, and SPEER and PARLANGE, District Judges.

SPEER, District Judge. There are two principles of equity which should control this case. They are: (1) Between equal equities the law will prevail. (2) The equity of the party who has been misled is superior to that of the party misleading.

Now, Mrs. Hazzard holds the legal title. She is a purchaser in good faith. The deed with the affidavits of the Fitzhughs disclose to her no purpose to defeat the homestead laws of Texas, but affirmatively show the contrary. She bought the security in good faith as an investment, and, conformably to its terms, she became the purchaser at the sale by the substituted trustee. She is then a bona fide purchaser, without notice of Mrs. Fitzhugh's alleged equity. Conceding the latter to exist, the equities are equal. The good faith of the purchase is expressly recognized in the opinion of the learned circuit court. It seems clear, then, that the legal title of Mrs. Hazzard should prevail.

It is not a sufficient reply to this to point out that the Security Mortgage & Trust Company, which may have known the transaction to be colorable, has guarantied the value of the security that Mrs. Hazzard bought. She has obtained, as the result of her investment, the legal title, by regular and lawful methods, and the equitable title of a bona fide purchaser. This title is good against everything except a superior equity which would overcome it, and her equity is at least equal to that upon which the complainant relies. A court of equity, therefore, may not enjoin her efforts to recover the land to which she is entitled. In addition to this, the Fitzhughs, including Mrs. Fitzhugh, placed on the market a security which upon its face was valuable and negotiable, and attractive to investors like Mrs. Hazzard. It was commended to her. Without suspecting the faith of husband, wife, and son, Mrs. Hazzard had no reason to doubt that the conveyance of title was valid and absolute. It is judicially ascertained that this was her conclusion. Her broker and her confidential adviser had formed the same opinion. If the conveyance failed to disclose a right in Mrs. Fitzhugh to avoid the sale, Mrs. Hazzard was misled, and misled by the complainants. Now, Mrs. Fitzhugh seeks a court of equity to cancel the purchase to make which she (all innocently, we may assume) misled Mrs. Hazzard. It follows that the equity of Mrs. Hazzard must prevail. Since it is not impossible to sell the homestead under the Texas law, it seems that Mrs. Hazzard has purchased the homestead of Mrs. Fitzhugh, and her title is good.

For these reasons, the decision of the circuit court should be reversed, and a decree to settle the controversy should be granted on the cross bill of the respondents. The decree of the circuit court is reversed, and the cause is remanded, with instructions to enter a decree on the original bill in favor of the defendant therein, Mrs. Fisher Hazzard, and dissolving the injunction, with costs, and to enter a decree in favor of the cross complainant, Mrs. Fisher Hazzard, on her cross bill, confirming and quieting her title to the premises in controversy, with such other relief as may be proper in equity.